# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JANE HITT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:23CV1277 HEA |
| ) | |
| MHM SUPPORT SERVICES D/B/A ) | |
| MERCY HOSPITAL EAST ) | |
| COMMUNITIES, MERCY HOSPITAL ) | |
| EAST COMMUNITIES D/B/A MERCY ) | |
| HOSPITAL ST. LOUIS, and MERCY ) | |
| HOSPITAL ST. LOUIS, ) | |
| ) | |
| Defendants. ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' ("Mercy") Motion for Summary Judgment. [Doc. No. 59]. Plaintiff opposes the motion, which is fully briefed and ready for disposition. For the reasons set forth below, the Motion will be granted.

### Facts and Background

Plaintiff brought this action alleging that Mercy's refusal to grant her a medical exemption under the COVID-19 Policy constitutes a failure to accommodate her disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a). Mercy denies Plaintiff's allegations. Mercy now moves for summary judgment regarding its liability under the ADA.

Plaintiff's employment with Mercy, began in 2013, when Mercy acquired Jefferson Memorial Hospital, where Plaintiff had been employed as an RN since 2006.

During the COVID-19 pandemic and national emergency, Mercy instituted a COVID-19 Vaccination Policy, which required all co-workers to receive a COVID-19 vaccine unless they requested and were approved for a religious or medical exemption from this mandatory vaccination policy.

At the time Mercy instituted the policy, Plaintiff was employed as a registered nurse (RN) in the Cancer Infusion Center, where she had worked since 2014. Her title at the time was "Lead Nurse." As a registered nurse in one of Mercy's Infusion Centers, Plaintiff provided direct care to cancer patients whose immune systems were compromised and who were extra-susceptible to contracting the COVID-19 virus.

In December of 2012, Plaintiff was hospitalized and treated for Guillain-Barre Syndrome. In the hospital, Plaintiff was treated by a number of providers including Dr. Tariq Alam, a neurologist. Dr. Alam concluded that Plaintiff's Guillain-Barre Syndrome was due to lupus, not the flu vaccine and that Plaintiff's lupus was manifesting as Guillain-Barre Syndrome. He did not specifically

2

communicate this conclusion to Plaintiff.

Plaintiff's primary care provider, Gina Heberlie, a nurse practitioner, was not involved in treating Plaintiff when she was experiencing Guillain-Barre in 2012, diagnosing the condition, or identifying its trigger. Heberlie treated Plaintiff throughout her recovery for Guillain-Barre and was responsible for her follow-up care.

Mercy implemented a mandatory flu vaccine policy in 2016. Dr. Keith Starke began as Chief Quality Officer at Mercy in 2014, where he led a clinical review of the influenza vaccines and was the clinical lead for implementing Mercy's influenza vaccination policy and reviewing requests for an exemption from that policy, including Plaintiff's. Dr. Starke also made clinical recommendations, along with several other infectious disease doctors, to senior executive leadership at Mercy who then used those recommendations to create and administer Mercy's influenza and COVID-19 vaccination policies. Dr. Starke was also the clinical lead for implementing Mercy's COVID-19 vaccination policy and reviewed requests for an exemption from that policy, including Plaintiff's.

Dr. Starke followed CDC contraindications when making exemption decisions for both Mercy's influenza vaccination policy and COVID-19 vaccination policy vaccine.

3

Plaintiff received the flu vaccine from the beginning of her employment at Jefferson Memorial Hospital in 2006 until 2012.

Mercy granted Plaintiff a permanent exemption from the influenza vaccination policy based on her history of Guillain-Barre Syndrome, which is a contraindication to the influenza vaccine. There has been ongoing concern with the flu shot increasing risk of Guillain-Barre. Syndrome.

Both in 2021 and today, the contraindications to receiving the COVID-19 vaccine are: 1) history of a severe allergic reaction (e.g., anaphylaxis) after a previous dose or to a component of the COVID-19 vaccine and 2) history of a known diagnosed allergy to a component of the COVID-19 vaccine.

Plaintiff did not suffer from a severe allergic reaction to a component of the COVID-19 vaccine administered by Mercy.

Following Mercy's adoption of its COVID-19 vaccination policy, Plaintiff applied for an exemption, citing her history of Guillain-Barre Syndrome in 2012 and stating her belief that this condition was caused by the flu vaccine. .

Plaintiff's primary care provider, Gina Heberlie FNP, a nurse practitioner supported Plaintiff's request for an exemption, indicating on Mercy's "Medical Certification for COVID-19 Vaccination Exemption" form that the exemption should be permanent, should apply to all three of the Pfizer, Moderna, and Johnson & Johnson vaccines, and that Plaintiff should not receive the COVID-19 vaccine

due to "having a severe, almost deadly reaction from her last flu shot." Heberlie's exemption request noted that Plaintiff was "[d]isabled for several months & had a long term [r]ehab to [r]ecover." Ms. Heberlie did not feel that Plaintiff needed to get the COVID vaccine because she had a reaction to the flu vaccine in 2012. Ms. Heberlie advised Ms. Hitt not to get the COVID because of her belief that Plaintiff almost died from having a vaccine in the past. She was also concerned that at the time, the COVID vaccine only had emergency FDA approval. She "considered Ms. Hitt and the entirety of her medical diagnoses in determining whether or not [she] thought the COVID vaccine was safe for [Plaintiff] to take."

  Ms. Heberlie testified that – if the flu vaccine caused Plaintiff to experience Guillain-Barre Syndrome – one of the ingredients in the flu vaccine caused the syndrome, but she did not know whether any of the ingredients of the 2012 flu vaccine (or any flu vaccine) were also present in either the Pfizer, Moderna, or Janssen COVID-19 vaccines. Ms. Heberlie failed to identify which ingredients in either the Pfizer, Moderna, or Janssen vaccines she believed posed a threat to Plaintiff. Ms. Heberlie did not know any patient outcomes regarding the administration of COVID-19 vaccines for patients that had already had Guillain-Barre Syndrome or systemic lupus erythematosus.

  Ms. Heberlie does not consider herself to be an expert in either immunology, infectious diseases, or neurology. Ms. Heberlie testified that when evaluating

5

whether a patient should take the COVID-19 vaccine, Ms. Heberlie would determine whether or not the patient had a contraindication to the vaccine. Ms. Heberlie also testified that she considered a patient's diagnoses, current illnesses, and whether they were generally healthy or sickly in evaluating whether they should receive the COVID vaccine. Ms. Heberlie did not consider the CDC contraindications list when determining whether Plaintiff should take the COVID-19 vaccine.

At her deposition, Ms. Heberlie could not recall the last time she read an article in a professional database or journal about the safety of a vaccine, could not recall ever reading a professional scholarly article related to the development and testing of a vaccine, and could not recall ever reading a professional article on Guillain-Barre Syndrome.

Plaintiff's fear of the vaccine played a role in Ms. Heberlie's decision about whether or not Plaintiff should receive the vaccine, a pattern that extended to her decisions about the same issue with respect to other patients.

If asked at the time, Dr. Tariq Alam, who treated Plaintiff for Guillain-Barre Syndrome and lupus during her hospitalization in 2012 and 2013, would have recommended that Plaintiff receive either the Pfizer or Moderna vaccines.

Plaintiff does not have a known allergy to the COVID-19 vaccine administered by Mercy.

A history of Guillain-Barré does not meet medical exemption criteria for COVID-19 vaccination, and it is not a contraindication according to the CDC.

Mercy denied Plaintiff's Request for a Medical Exemption because history of an allergic reaction to the flu or other vaccines is not a contraindication to the COVID-19 vaccine and does not even increase the risk of a reaction to an mRNA vaccine.

Mercy only administered the Moderna and Pfizer vaccines, which were mRNA vaccines, but employees could receive any of the vaccine versions and could receive them through another healthcare provider.

Following Mercy's denial of her request, Plaintiff appealed and attached medical records demonstrating her history of Guillain-Barre Syndrome. On August 15, 2021, Plaintiff submitted an addendum to her appeal where she reiterates that she was fearful of taking the COVID-19 vaccine because she had a history of Guillain-Barre Syndrome and Lupus that she believes was caused by the flu vaccine and notes she also previously had an allergic reaction to IV steroids. Plaintiff also submitted with this addendum the CDC pre vaccination checklist, which she relied on in explaining her belief that the Covid vaccine could kill her.

Plaintiff's appeal was denied because Plaintiff did not have a medical contraindication to the COVID-19 vaccine

Following the denial of her appeal, Plaintiff submitted her resignation

7

effective September 30, 2021. Plaintiff requested that Defendant classify her termination as a retirement which would allow her to receive a payout of her unused paid time off.

## Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *Herring*

*v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000); *Allen v. Entergy Corp.*, 181 F.3d 902, 904 (8th Cir. 1999).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Herring*, 207 F.3d at 1029 (quoting *Anderson*, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact, *see Crossley v. Georgia-Pac. Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004), and "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005).

## Discussion

Plaintiff' remaining claims allege Defendant's refusal to grant her a medical exemption under the COVID-19 Policy constitutes a failure to accommodate her disability, disability discrimination-wrongful termination, and disability discrimination-retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a). Mercy denies Plaintiff's allegations. Mercy now moves for summary judgment regarding its liability under the ADA.

The ADA prohibits employers from discriminating against qualified employees on the basis of disability. See 42 U.S.C. § 12112(a); see also *Anderson v. KAR Glob.*, 78 F.4th 1031, 1036 (8th Cir. 2023) (citation omitted). Such discrimination includes an employer's failure to provide reasonable accommodations for otherwise qualified employees with known physical or mental limitations, *Hustvet v. Allina Health Sys.*, 910 F.3d 399, 409 (8th Cir. 2018), and retaliating against employees for requesting an accommodation, *Anderson*, 78 F.4th at 1036 (citations omitted).

To assert a claim for disability discrimination under the ADA, the plaintiff bears the burden to show (1) she has a disability within the meaning of the ADA; (2) she was qualified to perform the essential functions of her job; and (3) she suffered adverse employment action due to her qualifying disability. 42 U.S.C. § 12112, et seq.; see also *Jacobs v. Mercy Health*, 719 F. Supp. 3d 894, 907 (E.D. Mo. 2024); *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 684 (8th Cir. 2003); Morriss, 817 F.3d at 1107.

Claimants may demonstrate a qualifying condition by providing evidence documenting their medical histories, but "unsupported self-serving allegations" are insufficient, standing alone. *Jacobs,* 719 F.Supp 3d at 907 (citing *Meeks v. Stevens*, No. 1:11-CV-0026 HEA, 2013 WL 308821, at *3 (E.D. Mo. Jan. 25, 2013)) (granting summary judgment for defendant where plaintiff "failed to offer any

10

medical evidence that he is a disabled individual under the ADA" and "only offered unsupported self-serving allegations" which he failed to substantiate with "sufficient probative evidence that would permit a finding in his favor."

Plaintiff must "produce sufficient evidence to demonstrate [she] has a disability within the meaning of the ADA." *Hustvet*, 910 F.3d at 410 (citation omitted). A person is disabled and therefore eligible for an accommodation if she has "a physical or mental impairment that substantially limits one or more of the major life activities" ("actual disability" prong); "has a record of such an impairment" ("record of" prong); or is "regarded as having such an impairment" ("regarded as" prong). 29 C.F.R. § 1630.2(g)(1)(i)-(iii); see also *Hustvet*, 910 F.3d at 410 (quoting EEOC's regulations). A "physical impairment" means "any physiological disorder or condition ... affecting one or more body systems," including "neurological, musculoskeletal, ... respiratory (including speech organs) ..., immune, [and] circulatory" systems. 29 C.F.R. § 1630.2(h)(1); *Wood*, 339 F.3d at 684. Conditions that are episodic or in remission may qualify if they "would substantially limit a major life activity when active." 29 C.F.R. § 1630.2(j)(1)(vii) (emphasis added). *Jacobs,* 719 F. Supp. 3d at 907. Furthermore, a plaintiff must establish that the condition qualified as a disability at the time the adverse employment determination occurred, even if she asserts the condition is episodic or in remission. See 29 C.F.R. 1630.2(j)(1)(vii).

Plaintiff has been diagnosed with Guillane-Barre Syndrome ("GBS"), the cause of which Dr. Alam attributed to Lupus. Plaintiff, however, believes she acquired GBS from a flu vaccine she received in 2012. She also claims she has allergic reactions to IV steroids and possibly one of the ingredients in the vaccine. Plaintiff spent a month in the hospital and rehabilitation in 2012. Her treating provider, Nurse Practitioner Herberlie treated Plaintiff during her recovery and recommended Plaintiff refrain from receiving the vaccine based primarily on Plaintiff's belief her GBS was caused by the flu vaccine in 2012 and Plaintiff's fear she would suffer adverse effects of the Covid-19 vaccine. Nurse Practitioner Herberlie did not rely on any admissible evidence to support her conclusion.

Plaintiff claims she still experiences "aftereffects" of GBS but has failed to produce medical evidence that the "aftereffects" she experiences are caused by GBS. Moreover, Plaintiff asserts, without any evidence that she still tests positive for Lupus. As Defendants correctly argue, Plaintiff has failed to produce evidence that she had a qualified disability at the time of the denial of the Covid-19 vaccine exemption in 2021. Accordingly, Plaintiff is unable to establish by admissible evidence that she had a qualified disability at the time of the accommodation request, *i.e.*, the exemption. See *Mobley v. St. Luke's Health System, Inc.*, 53 F.4th 452, 456 (8th Cir. 2022).

Even if Plaintiff could establish that she was disabled under the ADA, her claim still fails because she cannot show that her requested accommodation of a medical exemption from the vaccine is reasonable. In order for the accommodation to be reasonable, the request must relate to the individual's disability. See *Peebles v. Potter*, 354 F.3d 761, 769 (8th Cir. 2004) (explaining "an exception to a rule that is not necessitated by the individual's disability is presumptively unreasonable"); 214 F.3d 978, 982 (8th Cir. 2000).

Put another way, there must be a causal connection between the major life activity that is limited, and the accommodation sought." *Wood*, 339 F.3d at 687

Plaintiff argues that she is in fact disabled because of her GBS and her sensitivities and allergies to a component found in the flu vaccine, and therefore, possibly the COVID-19 vaccine. The evidence establishes that the components in the particular brand of vaccine used at Mercy, the Pfizer and Moderna vaccines, do not contain those components.

In vaccine exemption cases, courts look to whether the CDC has recognized the alleged disability as a contraindication for the vaccine when determining whether the requested accommodation is reasonable. See *Klimek v. Centracare Health Sys.*, No. 22-CV-3231 (LMP/LIB), 2025 WL 904442, at *4 (D. Minn. Mar. 25, 2025); *Jacobs,* 2024 WL 894861, at *10 (E.D. Mo. Mar. 1, 2024) (collecting cases). Mercy followed the CDC recognized contraindications for exemption: 1)

13

history of a severe allergic reaction (e.g., anaphylaxis) after a previous dose or to a component of the COVID-19 vaccine and 2) history of a known diagnosed allergy to a component of the COVID-19 vaccine. Based on the medical evidence Plaintiff produced, Mercy denied the exemption based on the CDC guidance.

> CDC guidance in this context provides for a consistent, uniform, objective, and fair evaluation of each employee's medical exemption request. Taken to its logical conclusion, [Plaintiff's] argument that an employer cannot rely on CDC contraindication guidance would make it effectively impossible for employers, especially those outside the healthcare field, to implement vaccination requirements without either retaining medical experts for every single condition an employee might identify as a contraindication or exposing themselves to ADA liability.

*Klimek*, 2025 WL 904442, at *10 (D. Minn. Mar. 25, 2025).

## Conclusion

It is undisputed that the CDC does not recognize GBS as a contraindication of the COVID-19 vaccine, thus Plaintiff's requested accommodation (vaccine exemption) is not sufficiently related to her purported disability of GBS. See Together Emps., 573 F. Supp. 3d at 434; Hustvet, 910 F.3d at 411. Furthermore, discussed above, Plaintiff has failed to demonstrate that she is disabled under the ADA. Thus, her claims of disability discrimination fail as a matter of law. Mercy is therefore entitled to summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment, [Doc. No. 59] is **GRANTED**.

A separate Judgment is entered this same date.

Dated this 31st day of July, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE